1   ROSNER, BARRY & BABBITT, LLP
2   Hallen D. Rosner, SBN 109740
    10085 Carroll Canyon Road, Suite 100
3   San Diego, California 92131
    Telephone: (858) 348-1005
4   Facsimile: (858) 348-1150
5   *hal@rbblawgroup.com*

6   LAW OFFICES OF WILLIAM R. MCGEE,
7   APLC
    William R. McGee, SBN 122153
8   701 Palomar Airport Road, Suite 250
9   Carlsbad, California 92011
    Telephone: (760) 438-9003
10  Facsimile: (760) 438-9004
11  *lemonatty@aol.com*

12  Attorneys for Plaintiffs

13              UNITED STATES DISTRICT COURT

14              SOUTHERN DISTRICT OF CALIFORNIA

15

16  CLARENCE  F.  SAFLEY,  JR.;  and        Case No.   3:20-cv-00366-BAS-MDD
    DEBORAH S. SAFLEY,
17                                          **Plaintiffs' Opposition to Defendant's
18                Plaintiffs,               Motion to Compel Arbitration and Stay
                                            Action**
19       v.
                                            Date:     June 8, 2020
20  BMW OF NORTH AMERICA, LLC; and
21  DOES 1 through 10, inclusive,           District Judge: Hon. Cynthia A. Bashant
                                            Dept.: 4B
22                Defendants.
23                                          Magistrate: Hon. Mitchell D. Dembin
                                            Chambers Room: Suite 1180
24
25                                          Complaint Filed: January 24, 2020
                                            Trial Date: None Set
26

27

28

# TABLE OF CONTENTS

I. Introduction ........................................................................................................ 1

II. Statement of facts .............................................................................................. 2

III. BMW's Motion fails because BMW failed to produce an authenticated copy of an arbitration agreement ........................................................... 3

IV. The Court should deny BMW's Motion as the product of forum shopping ..... 4

V. Only the Court can decide arbitrability of this dispute because the issue is whether the Safleys consented to arbitration with BMW ............................ 4

VI. The Constitution forbids nonsignatory BMW from compelling arbitration ..... 6

    A. BMW's reliance on the doctrine of equitable estoppel is misplaced ..... 7

        1. Per *Kramer* and *Goldman*, equitable estoppel does not apply ..... 8

            a. The Safleys did not rely on the Contract's terms in asserting their claims against BMW, and these claims are not intertwined *with the Contract* ............................ 8

            b. The Safleys did not allege substantially interdependent and concerted misconduct by Ford and a signatory that was "intimately connected" with the obligations of the Contract ......................................................................... 11

            c. The fact the Safleys would have had no claims against BMW but for their purchase of the Vehicle is utterly immaterial ...................................................................... 12

            d. The fact the Contract encompasses claims *between the Safleys and Dealer* concerning resulting relationships with third parties is likewise immaterial .... 12

            e. Equitable estoppel would work an *in*equity upon the Safleys and consumers statewide notwithstanding their constitutional rights to trials by jury ......................... 13

        2. The Ninth Circuit's thoughtful analysis in the analogous case of *Kramer* is strongly persuasive—unlike the district court's conflicting opinion in *Mance* ..................................................... 15

    B. BMW is not a third-party beneficiary of the Contract ........................ 18

VII. Should the Court nonetheless grant BMW's Motion, the Safleys' forum choice of JAMS should be honored ................................................................ 21

    A. The Safleys' choice of JAMS prevails over BMW's preferences........ 22

    B. BMW cannot object to JAMS in good faith ....................................... 23

VIII. Conclusion.......................................................................................................... 24

# TABLE OF AUTHORITIES

## Cases

*A. B. v. Prelude Fertility*
(9th Cir. Apr. 26, 2019) ........................................................................... 18

*Amergence Supply Chain Mgmt. Inc. v. Changhong (Hong Kong) Trading Ltd.*
No. CV-15-9976-MWF (AFMx), 2016 WL 8234652, at *9 (C.D. Cal. Apr. 21, 2016) ........................................................................... 18

*Anderson v. Nichols*
359 S.E.2d 117, 124 (W. Va. 1987) ....................................................... 24

*Arthur Andersen LLP v. Carlisle*
556 U.S. 624, 630-31 (2009) ..................................................... 4, 7, 15

*AT&T Mobility LLC v. Concepcion*
563 U.S. 333 (2011) ........................................................................... 7

*Boucher v. Alliance Title Co., Inc.*
25 Cal. Rptr. 3d 440, 443 (Cal. Ct. App. 2005) .................................... 15

*Branch v. Tunnell*
14 F.3d 449, 453 (9th Cir. 1994) ............................................................. 3

*Cal. Lettuce Growers v. Union Sugar Co.*
45 Cal. 2d 474, 484 (1955) ..................................................................... 24

*Cione v. Foresters Equity Services, Inc.*
58 Cal. App. 4th 625 (1997) ................................................................... 21

*Citizens Suburban Co. v. Rosemont Dev. Co.*
53 Cal. Rptr. 551, 557 (Cal. Ct. App. 1966) ........................................ 20

*Comer v. Micor, Inc.*
436 F.3d 1098, 1101 (9th Cir. 2006) ..................................................... 14

*enaroya v. Willis*
232 Cal. Rptr. 3d 808, 813 (Cal. Ct. App. 2018) .................................... 6

*Engineers & Architects Assn. v. Cmty. Dev. Dep't*
30 Cal. App. 4th 644, 653 (1994) ............................................................. 7

*Fikhman v. BMW of North America LLC*
No. 2:19-cv-03963-VAP-MRWx, 2019 WL 6721626, *2 (C.D. Cal. Oct. 15, 2019) ........................................................................... 18

*Fuentes v. TMCSF, Inc.*
237 Cal. Rptr. 3d 256, 265 (Cal. Ct. App. 2018) ................................ 12, 20

*Galbraith v. Cty. of Santa Clara*
307 F.3d 1119 (9th Cir. 2002) ................................................................. 3

*Goldman v. KPMG LLP*
    92 Cal. Rptr. 3d 534, 541 (Cal. Ct. App. 2009) ........................................ passim

*Graham v. Scissor-Tail, Inc.*
    28 Cal.3d 807, 824-25 (1981) ........................................................ 23

*Green Tree Financial Corp. v. Randolph,*
    531 U.S. 79 (2000) ................................................................... 22

*Henry Schein, Inc. v. Archer and White Sales, Inc.*
    139 S. Ct. 524, 530 (2019) ............................................................ 6

*In re Apple iPhone 3G Prod. Liab. Litig.*
    859 F. Supp. 2d 1084, 1095 (N.D. Cal. 2012) ........................................ 11

*In re Toyota Motor Corp. Hybrid Brake Mktg., Sales, Practices and Prods. Liab. Litig.*
    828 F. Supp. 2d 1150 (C.D. Cal. 2011) ............................................ 16, 17

*In re Toyota Motor Corp. Unintended Mktg., Sales Practices, and Prod. Liab. Litig.*
    838 F.Supp.2d 967, 993 (C.D.Cal. 2012) .......................................... 12, 16

*Izzi v. Mesquite Country Club*
    186 Cal. App. 3d 1309, 1318 (1986) ................................................ 23

*Jurosky v. BMW of North America, LLC*
    --- F. Supp. 3d ---, 2020 WL 1024899 .......................................... 5, 7, 18

*Katz v. BMW of North America, LLC*
    No. 4:19-cv-01553-KAW, 2019 WL 4451014, *3-4 (N.D. Cal. Sept. 17, 2019) . 18

*Kim v. BMW of North America, LLC*
    408 F. Supp. 3d 1155, 1158 (C.D. Cal. 2019) ...................................... 6, 7, 18

*Kramer v. Toyota Motor Corp.*
    705 F.3d 1122, 1127 (9th Cir. 2013) .............................................. passim

*Lanning v. BMW of North America, LLC*
    No. 3:19-cv-00773-BEN-LL, 2019 WL 5748518, *2-3 (S.D. Cal. Nov. 5, 2019) 18

*Madeja v. Olympic Packers, LLC*
    310 F.3d 628, 639 (9th Cir. 2002) ................................................... 3

*Mance v. Mercedes-Benz USA*
    901 F. Supp. 2d 1147, 1157 (N.D. Cal. 2012) .................................. 11, 15, 17

*Martinez v. Socoma Cos., Inc.*
    521 P.2d 841, 843 (Cal. 1974) ...................................................... 19

*Metalclad Corp. v. Ventana Envtl. Org'l P'ship*
    109 Cal. App. 4th 1705, 1713 (2003) ............................................ 14, 15

*Murphy v. DirecTV, Inc.*
    724 F.3d 1218, 1231 (9th Cir. 2013) ............................................... 10

*Neverkovec v. Fredericks*
    74 Cal. App. 4th 337, 348-49 (1999) ............................................... 19

*Newirth v. Aegis Senior Cmtys., LLC*
  931 F.3d 935, 941 (9th Cir. 2019) .................................................. 4

*NORCAL Mutual Insurance Company v. Newton*
  100 Cal. Rptr. 2d 683 (Cal. Ct. App. 2000) ............................... 21, 22

*Palmer v. Valdez*, 560 F.3d 965
  968 (9th Cir. 2009) ....................................................................... 8

*PowerAgent Inc. v. Elec. Data Sys. Corp.*
  358 F.3d 1187, 1193 (9th Cir. 2004) ............................................ 5

*Practices and Prods. Liab. Litig.*
  828 F. Supp. 2d 1150 (C.D. Cal. 2011) ....................................... 17

*R. E. v. Pac. Fertility Ctr.*
  No. 18-cv-01586-JSC, 2019 WL 1331044, at *6 (N.D. Cal. Mar. 25, 2019) 18

*ReadyLink Healthcare, Inc. v. State Comp. Ins. Fund*
  754 F.3d 754, 756 n.1 (9th Cir. 2014) ......................................... 7

*Ronay Family Limited Partnership v. Tweed,*
  157 Cal. Rptr. 3d 680 (Cal. Ct. App. 2013) ................................ 21

*Ronay Family Ltd. P'ship v. Tweed*
  157 Cal. Rptr. 3d 680, 683, 686 (Cal. Ct. App. 2013) ................. 21

*Rowe v. Exline*, 63 Cal. Rptr.
  3d 787, 797 (Cal. Ct. App. 2007) ................................................ 15

*Sanchez v. Valencia Holding Co., LLC*
  353 P.3d 741, 748 (Cal. 2015) .................................................... 24

*Sanchez v. Valencia Holding Company, LLC,*
  353 P.3d 741, 748 (Cal. 2015) .................................................... 25

*Sandquist v. Lebo Auto., Inc.*
  376 P.3d 506, 517 (Cal. 2016) ..................................................... 5

*Soto v. American Honda Motor Co., Inc.*
  No. C 12-01377 SI, 2012 WL 5877476 (N.D. Cal. Nov. 20, 2012) .............. 17

*Souza v. Westlands Water Dist.*
  38 Cal. Rptr. 3d 78 ..................................................................... 19

*Speiker v. FCA US LLC*
  No. SACV 19-02150 JVS (ADS), 2020 WL 1972507, *4-5 (C.D. Cal. Mar. 9, 2020)......................................................................................... 18

*Sydnor v. Conseco Fin. Servs. Corp.*
  252 F.3d 302, 307 (4th Cir. 2001) ............................................... 7

*Titan Grp., Inc. v. Sonoma Valley Cty. Sanitation Dist.*
  164 Cal. App. 3d 1122, 1127-28 (1985) ....................................... 8

*Tracinda Corp. v. DaimlerChrysler AG*
    502 F.3d 212, 222 (3d Cir. 2007) ................................................................. 8

*Turtle Ridge Media Grp., Inc. v. Pac. Bell Directory*
    44 Cal. Rptr. 3d 817, 818-19 (Cal. Ct. App. 2006) ....................................... 10

*United States v. Park Place Assocs., Ltd.*
    563 F.3d 907, 921 (9th Cir. 2001) ................................................................. 4

*United Steelworkers of Am. v. Warrior & Gulf Nav. Co.*
    363 U.S. 574, 582 (1960) ............................................................................... 5

*Vincent v. BMW of North America, LLC*
    No. CV 19-6439 AS, 2019 WL 8013093, *3-4 (C.D. Cal. Nov. 26, 20196, 7, 18

*Volt Info. Scis., Inc. v. Bd. of Trs. of Leland Stanford Jr. Univ.*
    489 U.S. 468, 479 (1989) ............................................................................ 5, 7

*Washington Mut. Fin. Grp., LLC v. Bailey*
    364 F.3d 260, 267 n.6 (5th Cir. 2004) ......................................................... 15

Statutes

16 C.F.R. § 433.2 .............................................................................................. 24

9 U.S.C. § 5 ....................................................................................................... 30

California Civil Code §§ 1792-1792.2 ................................................................ 2

Code of Civil Procedure §1559 ......................................................................... 23

Code of Civil Procedure §1794(a) ...................................................................... 7

Code of Civil Procedure §1794(b) ...................................................................... 8

Code of Civil Procedure §1281.6 ................................................................. 29, 30

Code of Civil Procedure §1638 ......................................................................... 27

Code of Civil Procedure §1639 ......................................................................... 27

Code of Civil Procedure §1644 ......................................................................... 28

Code of Civil Procedure §1792 ......................................................................... 11

Code of Civil Procedure §1792.1 ...................................................................... 11

Code of Civil Procedure §1793.2(d)(2) ............................................................ 12

Rules

Federal Rule of Evidence 201(c)(2) .................................................................... 7

Plaintiffs' Opposition to Defendant's Motion to Compel Arbitration and Stay Action

## I.  Introduction

BMW's Motion to Compel Arbitration ("Motion") seeks to compel arbitration under a contract it did not sign and under which it received zero benefit. This is simply BMW's latest attempt to limit the rights of consumers statewide while limiting its own exposure to judicial sanction.[1] Simply put, BMW's Motion is riddled with outright falsehoods, misrepresentations of law, and red herrings, which are presumably the only explanation why BMW has managed to secure rulings in its favor on similar motions in other cases.

There simply is no basis to compel Plaintiffs Frank and Deborah Safley to compel arbitration of their lemon-law dispute against BMW. BMW spends *pages* discussing the existence of the arbitration agreement between the Safleys and their vehicle's seller. Tellingly, BMW failed to provide an authenticated copy of this contract. It cannot authenticate this contract because it was not a party to that transaction. Solely for sake of argument, the Safleys assume for purposes of this motion that this copy of the contract controls.

Still, BMW points to zero language in its unauthenticated copy of the contract compelling the Safleys to arbitrate their dispute against BMW. Motion at 8:13-10:6, 17:15-18:6. While this agreement might encompass a claim regarding the condition of the vehicle between the Safleys and their car dealer, it is explicitly limited to disputes between "you" (the Safleys) and "us" (the dealer and its assignee). There is no binding arbitration agreement between the Safleys and *BMW*. *But see* Motion at 11:24-12:2 (falsely alleging, "[I]t is undisputed that a valid agreement to arbitrate . . . exists between Plaintiffs and Defendant").

In short, the Safleys did not bargain away their right to have a jury decide their claims against BMW. Nor is there any alternative state-law theory upon which BMW may

---

[1] BMW's motive is evident from its argument that consumers should anticipate manufacturers to compel arbitration because the "[s]tandard form contracts [that] are utilized by virtually every automobile *dealership* in California" and assigned to *banks*. Motion at 17:1-5.

rely to mandate arbitration. This case does *not* arise from the contract between the Safleys and the dealer that sold them the car. It arises from BMW's separate express written warranty which is devoid of any arbitration provision. As BMW properly noted, the contract executed by the Safleys and their car dealer was only "used to memorialize Plaintiffs' purchase of the Subject Vehicle." Motion at 17:1-2. *But see id.* at 10:15-17 (falsely alleging the Safleys' claims "would not exist without their assent to all of the terms of the conditions of the Purchase Agreement"). BMW's Motion should be denied.

## II.   Statement of facts

On October 30, 2017, the Safleys entered into a contract (the "Contract") with BMW Encinitas ("Dealer") for their purchase of a new 2017 BMW 540i (the "Vehicle"). Declaration of Clarence F. Safley, Jr. ("Safley Decl.") at ¶ 2. The Vehicle—*not the sale contract*—was accompanied by BMW's express warranty. Motion 21:4-5; *see also* COE, Ex. 1 at 2 (providing BMW warrants "against defects in materials or workmanship to the first retail purchaser, and each subsequent purchaser" thus showing the Warranty follows *the Vehicle*, irrespective of terms of transfer of ownership). The Vehicle—*again, not the Contract*—was also accompanied by BMW's implied warranties of merchantability and fitness. Cal. Civ. Code §§ 1792-1792.2.[2]

Since the transaction, the Safleys have experienced recurring and seemingly irreparable problems with the Vehicle's brakes. Safley Decl. at ¶ 5. They filed suit against BMW, alleging violations of the Song-Beverly Consumer Warranty Act (the "Song-Beverly Act"), Civ. Code § 1790, *et seq.* Dkt. No. 1-2. BMW removed the matter to this Court based on diversity jurisdiction. Dkt. No. 1. BMW now seeks to compel arbitration of the matter under the Safleys' contract with Dealer. BMW relies on an unauthenticated copy (the "Contract"), which contains the following language (the "Arbitration Provision"):

> Any claim or dispute . . . *between you and us* or our employees, agents, successors or assigns, which arises out of or relates to your credit application,

---

[2] All subsequent statutory references are to California codes unless otherwise noted.

1 | purchase or condition of this vehicle, this contract, or any resulting transaction or relationship (including any such relationship with third parties who do not sign this contract) shall, at your or our election, be resolved by neutral, binding arbitration and not by a court action.

3 Declaration of Robert K. Dixon in Support of BMW's Motion, Ex. 1 ("Defense Ex. 1").

## III. BMW's Motion fails because BMW failed to produce an authenticated copy of an arbitration agreement

The threshold question on BMW's Motion is whether there is an arbitration agreement. 9 U.S.C. § 4. BMW represents to the Court the Contract is in fact a copy of the sale contract executed by the Safleys and Dealer and asks the Court to take judicial notice of this copy. Motion at 8 n.1. BMW claims the Court may consider the copy attached to the Dixon Declaration because it was referenced in the complaint. *Id.* However, BMW's cited authority compels a different conclusion.

In *Branch v. Tunnell*, 14 F.3d 449, 453 (9th Cir. 1994), *overruled on other grounds by Galbraith v. Cty. of Santa Clara*, 307 F.3d 1119 (9th Cir. 2002), on a motion to dismiss, the court considered a document that was "specifically refer[enced]" in the complaint where its authenticity was "not questioned." Assuming arguendo this case is applicable here, the Safleys' complaint makes no mention whatsoever of the contract attached to the Dixon Declaration, nor was this contract attached to their complaint. *See generally* Dkt. No. 1-2. All the complaint says is the Safleys "purchased and/or leased" the Vehicle. *Id.* at ¶ 4.

As it stands, BMW's Motion relies on a document purportedly authenticated by one without personal knowledge, or even information and belief, that the document is what he says it is. While it was previously filed in this action, it was filed by none other than BMW itself. BMW has yet to explain how it acquired this document. Judicial notice is a shortcut to admissibility but it does not negate the need for authentication. *Madeja v. Olympic Packers, LLC*, 310 F.3d 628, 639 (9th Cir. 2002).

In short, BMW failed to make the threshold showing required to compel arbitration. The Court should thus deny BMW's Motion.

/ / /

# IV.   The Court should deny BMW's Motion as the product of forum shopping

"The right to arbitration, like any contract right, can be waived." *United States v. Park Place Assocs., Ltd.*, 563 F.3d 907, 921 (9th Cir. 2001). Waiver is found where "a party acts inconsistently with exercising the right to arbitrate" by "(1) mak[ing] an intentional decision not to move to compel arbitration and (2) actively litigat[ing] the merits of a case for a prolonged period of time in order to take advantage of being in court." *Newirth v. Aegis Senior Cmtys., LLC*, 931 F.3d 935, 941 (9th Cir. 2019). While BMW might not have litigated the *merits* of the Safleys' dispute before filing its Motion, waiver should still be found in light of BMW's blatant forum shopping.

BMW rants and raves over the handful of district court decisions in its favor on motions to compel arbitration through vehicle purchase contracts. *See, e.g.*, Motion at 18 n.3. Not one of BMW's cited rulings is from a state court—despite the fact BMW's ability to compel arbitration poses a question of state law. *Arthur Andersen LLP v. Carlisle*, 556 U.S. 624, 630-31 (2009). Why remove the matter to federal court only to seek to have the matter taken out of court entirely? The only logical conclusion is that BMW thought it had better odds in federal court and thus made the strategic decision to remove the case *before* seeking to compel arbitration. The courts are not chess pieces. The Court should not allow BMW to play the judiciary in this manner.

# V.   Only the Court can decide arbitrability of this dispute because the issue is whether the Safleys consented to arbitration with BMW

If BMW had its way, any third party—even the Safleys' employers—could invoke the Contract's Arbitration Provision against the Safleys in the event of a dispute, and the issue of whether the Arbitration Provision extended to such other parties would be decided exclusively by a private arbitrator. Motion at 12:8-13:17. This proposition finds no basis in logic or in law. Why should an arbitrator have the authority to privately determine whether a party to an arbitration agreement has relinquished her constitutional right to trial by jury on the petition of a nonparty thereto?

///

This is particularly concerning given the considerable deference accorded the arbitrator's decision on the question. *See PowerAgent Inc. v. Elec. Data Sys. Corp.*, 358 F.3d 1187, 1193 (9th Cir. 2004) (explaining arbitrator's holdings are subject to "highly deferential standard of review"). Such a rule would "presume arbitrability without first establishing, *independently*, consent to arbitration," thus "plac[ing] the proverbial cart before the horse." *Sandquist v. Lebo Auto., Inc.*, 376 P.3d 506, 517 (Cal. 2016). Arbitration is *strictly* "a matter of consent, not coercion." *Volt Info. Scis., Inc. v. Bd. of Trs. of Leland Stanford Jr. Univ.*, 489 U.S. 468, 479 (1989). "[A] party cannot be required to submit to arbitration any dispute which he has not agreed so to submit." *United Steelworkers of Am. v. Warrior & Gulf Nav. Co.*, 363 U.S. 574, 582 (1960).

It is not enough that the Arbitration Provision provides arbitrability is to be decided by the arbitrator. Such an interpretation ignores the *clear and unmistakable evidence* that the Safleys intended only the arbitrability of any dispute they had *with Dealer* to be decided by the arbitrator: "Any claim or dispute . . . and the arbitrability of the claim or dispute[] *between you and us*[3] . . . shall, at your or our election, be resolved by neutral, binding arbitration . . . ." Defense Ex. 1.

The Ninth Circuit found this fact dispositive, reasoning:

> While Plaintiffs may have agreed to arbitrate arbitrability in a dispute with the Dealerships, the terms of the arbitration clauses are expressly limited to Plaintiffs and the Dealerships. For example, Scholten's arbitration clause states that "[e]ither you or we may choose to have a dispute between you and us decided by arbitration." The language . . . evidences Plaintiffs' intent to arbitrate arbitrability with the Dealerships and no one else. . . . Given the absence of clear and mistakable evidence that Plaintiffs agreed to arbitrate arbitrability with nonsignatories, the district court had the authority to decide whether the instant dispute was arbitrable.

*Kramer v. Toyota Motor Corp.*, 705 F.3d 1122, 1127 (9th Cir. 2013); *accord Jurosky v. BMW of North America, LLC*, --- F. Supp. 3d ---, 2020 WL 1024899, at *2-3 (S.D. Cal.

---

[3] Admittedly, the Contract evidences the Safleys' intent to arbitrate arbitrability of any disputes they had against Dealer's "employees, agents, successors or assigns" as well. Defense Ex. 1. BMW does not claim to be an employee, agent, or successor of Dealer. Meanwhile, BMW's attenuated relationship with Dealer's assignee does not render BMW an assignee of its own right. *See* discussion, *infra*, Section VI(B). Thus, the fact the Contract extends to these persons is immaterial.

Feb. 27, 2020); *Kim v. BMW of North America, LLC*, 408 F. Supp. 3d 1155, 1158 (C.D. Cal. 2019); *Vincent v. BMW of North America, LLC*, No. CV 19-6439 AS, 2019 WL 8013093, *3-4 (C.D. Cal. Nov. 26, 2019;.

Likewise recognizing the flaw in BMW's assertion, *Benaroya v. Willis*, 232 Cal. Rptr. 3d 808, 813 (Cal. Ct. App. 2018), held, although "the language of an arbitration agreement determines the scope of the arbitrator's powers granted by the signatories, the agreement cannot bind nonsignatories, absent a *judicial* determination that the nonsignatory falls within the limited class of third-parties" bound by that agreement. (Emphasis added).

BMW ignored binding precedent in contending otherwise. Its own cited authority prohibits the Court from blindly submit the question of arbitrability of any claim involving the Safleys to a private arbitrator. "To be sure, before referring a dispute to an arbitrator, the court determines whether a valid arbitration agreement exists." *Henry Schein, Inc. v. Archer and White Sales, Inc.*, 139 S. Ct. 524, 530 (2019). Currently, there is a dispute as to whether such an agreement exists between the Safleys and BMW. The Court must decide that question before submitting *any* question to an arbitrator.

## VI.    The Constitution forbids nonsignatory BMW from compelling arbitration

The Seventh Amendment grants the Safleys the inviolate right to a jury trial of this matter.[4] While the loss of this right "is a necessary and fairly obvious consequence of an agreement to arbitrate," *Sydnor v. Conseco Fin. Servs. Corp.*, 252 F.3d 302, 307 (4th Cir.

---

[4] Admittedly, such a right arises in "Suits at common law." *Id.* While the Safleys prayed for "rescission of the contract and restitution of all consideration," the Safleys in fact seek *damages* under the Song-Beverly Act. *See* Civ. Code § 1794(a) ("Any buyer of consumers goods who is damaged by a failure to comply with any obligation under this chapter or under an implied or express warranty . . . may bring an action for the recovery of *damages* and other legal and equitable relief." [emphasis added]). The Safleys' Contract is with the Vehicle's lienholder, not BMW. Safley Decl. at ¶¶ 6-7. The Safleys have made no payments to BMW specifically. *Id.* at ¶ 6. They seek *damages* for BMW's failure to comply with its statutory duty to promptly repurchase the Vehicle, inter alia. *See* Civ. Code § 1794(b) ("The measure of the buyer's *damages* . . . shall include the rights of replacement or reimbursement as set forth in subdivision (d) of Section 1793.2 . . . ." [emphasis added]).

2001), arbitration is *strictly* "a matter of consent," *Volt Info. Scis., Inc. v. Bd. of Trs. of Leland Stanford Jr. Univ.*, 489 U.S. 468, 479 (1989). "There is no public policy in favoring arbitration of disputes which the parties have not agreed to arbitrate." *Engineers & Architects Assn. v. Cmty. Dev. Dep't*, 30 Cal. App. 4th 644, 653 (1994).

Nonetheless, a nonsignatory to an arbitration agreement governed by the Federal Arbitration Act may compel arbitration thereunder as narrowly permitted by *state* law. *Arthur Andersen LLP v. Carlisle*, 556 U.S. 624, 630-31 (2009).[5] Here, BMW admits it is not a signatory. Motion at 18:9-10. Nonetheless, using the Court as a mere pawn in its quest to evade its statutory obligations, BMW claims it can compel arbitration under the Contract under the doctrine of equitable estoppel and as a third-party beneficiary. BMW's assertions are demonstrably false.[6]

## A.     BMW's reliance on the doctrine of equitable estoppel is misplaced

Contrary to BMW's assertion, Motion at 21:23-22:2, there is no meaningful distinction between the present case and such decisions as *Kramer v. Toyota Motor Corp.*, 705 F.3d 1122 (9th Cir. 2013). This authority clarifies there are no grounds for equitable estoppel here. Most notably, the inequities sought to be prevented by the doctrine are absent from the instant case. To the contrary, its application here would inflict an inequity upon the Safleys and consumers statewide who wish to assert their legal rights before the

---

[5] To the extent BMW suggests *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333 (2011), compels a contrary conclusion, *Concepcion* addresses unconscionability defenses as to *signatories* under the FAA. It contains no mention of *nonsignatories*.

[6] BMW cites a number of district-court rulings granting motions like its Motion here. Motion at 18 n.3. Omitted from its Motion are the rulings of other courts that have seen through the smoke and mirrors and refused to allow BMW to compel arbitration through consumer sale contracts. *See, e.g.*, *Jurosky v. BMW of North America, LLC*, --- F. Supp.3d ---, 2020 WL 1024899 (S.D. Cal. Feb. 27, 2020); *Kim v. BMW of North America, LLC*, 408 F. Supp. 3d 1155 (C.D. Cal. 2019); *Vincent v. BMW of North America, LLC*, No. CV 19-6439 AS, 2019 WL 8013093 (C.D. Cal. Nov. 26, 2019). The Safleys additionally request judicial notice of orders in *Holmes v. Ford Motor Company, Garay v. Ford Motor Company, Volkswagen Automobile Emissions Cases, Ham v. Ford Motor Company*, and *Gallardo v. Ford Motor Company*—which are attached to the Compendium of Exhibits as Exhibits 3-7, respectively—under Federal Rule of Evidence 201(c)(2). *See, e.g.*, *ReadyLink Healthcare, Inc. v. State Comp. Ins. Fund*, 754 F.3d 754, 756 n.1 (9th Cir. 2014) (providing state court proceedings are judicially noticeable); *see also* Declaration of Hallen D. Rosner ("Rosner Decl.") at ¶¶ 3-8 (authenticating these orders).

juries to which they are constitutionally entitled and which they have not "'knowingly and voluntarily'" waived. *Palmer v. Valdez*, 560 F.3d 965, 968 (9th Cir. 2009) (quoting *Tracinda Corp. v. DaimlerChrysler AG*, 502 F.3d 212, 222 (3d Cir. 2007)). "We cannot elevate judicial expediency over access to the courts and the right to jury trial in the absence of clear waiver." *Titan Grp., Inc. v. Sonoma Valley Cty. Sanitation Dist.*, 164 Cal. App. 3d 1122, 1127-28 (1985).

### 1. Per *Kramer* and *Goldman*, equitable estoppel does not apply

Equitable estoppel applies *only if* (1) the Safleys relied upon the Contract's terms in asserting their claims against BMW or such claims are "'intimately founded in or intertwined with'" the Contract; or (2) the Safleys alleged "substantially interdependent and concerted misconduct" by BMW and a signatory to the Arbitration Provision, and such allegations are "'founded in or intimately connected with the obligations of'" the Contract. *Kramer*, 705 F.3d at 1128-29 (quoting *Goldman v. KPMG LLP*, 92 Cal. Rptr. 3d 534, 541 (Cal. Ct. App. 2009)). Neither prong is met in the present action, notwithstanding BMW's contrary contentions.

### a. The Safleys did not rely on the Contract's terms in asserting their claims against BMW, and these claims are not intertwined *with the Contract*

Like BMW here, in *Kramer*, Toyota urged the plaintiff's warranty claims "arose by operation of the Purchase Agreements and [were thus] intertwined with the Purchase Agreements." 705 F.3d 1122, 1131 (9th Cir. 2013); *cf.* Motion at 21:2-3 ("Here, the claims asserted against Defendant arise out of the Purchase Agreement, the Subject Vehicle, and the Subject Vehicle's warranties."). The Ninth Circuit disagreed: "The Purchase Agreements expressly differentiate dealer warranties from manufacturer warranties. For example, [one agreement] states, '[t]his provision does not affect any warranties covering the vehicle that the vehicle manufacturer or supplier may provide.'" *Id.* (second alteration in original). Thus, *Kramer* held the plaintiffs' warranty claims arose "independently from the Purchase Agreements, rather than intimately relying on them." *Id.*

Contrary to BMW's assertion, Motion at 22:12-15, nearly identical language appears in the Contract here. Under the heading "WARRANTIES SELLER DISCLAIMS," the Contract states, "This provision does not affect any warranties covering the vehicle that the vehicle manufacturer may provide." Defense Ex. 1, at ¶ 4. BMW's express warranty was thus *specifically* excluded from the Contract. Even more telling is the fact this warranty follows *the Vehicle*, not the Contract. COE, Ex. 1 at 2 (providing BMW warrants "against defects in materials or workmanship to the first retail purchaser, and each subsequent purchaser").

The same is true of BMW's implied warranty of merchantability, which arose by operation of California law based on the facts (1) the Safleys purchased the Vehicle, (2) the Vehicle was manufactured or distributed by BMW, and (3) at the time of the transaction, BMW was in the business of manufacturing or distributing vehicles. Civ. Code § 1792; Judicial Council of California Civil Jury Instructions [hereinafter CACI] No. 3210 (Westlaw, updated Jan. 2020); *see also* Civ. Code § 1795 (extending manufacturers' statutory obligations to distributors providing express warranties). Meanwhile, BMW's implied warranty of fitness for a particular purpose arose by operation of California law based on the following: (1) the Safleys purchased the Vehicle, (2) BMW manufactured or distributed the Vehicle, (3) BMW knew or had reason to know the Safleys intended to use the Vehicle for a particular purpose, (4) BMW knew or had reason to know the Safleys were relying on BMW's skill and judgment to select a vehicle suitable for that purpose, and (5) the Safleys justifiably relied on BMW's skill and judgment. Civ. Code § 1792.1; CACI No. 3211. The Contract has *nothing* to do with the Safleys' implied-warranty claims.

The Safleys' complaint verifies their claims against BMW arose independently from the Contract, did not intimately rely on the Contract, and were not intertwined with the Contract. The principal obligations under the Contract were as follows: (1) Dealer transfers the Vehicle to the Safleys, and (2) the Safleys make payments to Dealer or Dealer's assignee. BMW was not obligated thereunder to provide any warranty for the

Vehicle—express or implied. Simply put, *BMW had no obligations whatsoever under the Contract.*

Realizing this, BMW falsely contends "standing for [the Safleys' Song-Beverly] claims is derived from the [Contract]." Motion at 22:16-17. Yet, the Contract is relevant only to establish the *fact* of the sale and to aid in determining the appropriate remedy. *Cf. Murphy v. DirecTV, Inc.*, 724 F.3d 1218, 1231 (9th Cir. 2013) ("[T]he Customer Agreement proves at most the existence of a transaction; Plaintiffs' claims do not depend on the Agreement's terms."); *Kramer v. Toyota Motor Corp.*, 705 F.3d 1122, 1130-32 (9th Cir. 2013) (prayer for relief seeking "revocation of acceptance" and plaintiffs' reliance upon "price term" in support of prayer for damages held *not* to warrant application of equitable estoppel). The Safleys do not otherwise need the Contract to establish BMW's *liability.*

Indeed, the Contract is not even mentioned in the Safleys' complaint. *See* Dkt. No. 1-2, at ¶ 4 (simply alleging "Plaintiffs purchased and/or leased [the Vehicle]"). Still, this would not have equitably estopped the Safleys from refusing to arbitrate their claims against BMW. *Goldman v. KPMG LLP*, 92 Cal. Rptr. 3d 534, 541 (Cal. Ct. App. 2009). No allegation in the Safleys' complaint revealed "any claim founded in or even tangentially related to any duty, obligation, term, or condition imposed *by the [Contract]*" on BMW. *Id. at* 551 (emphasis added). The duties alleged in the Safleys' complaint in fact arose by *law. See, e.g.*, Civ. Code § 1793.2(d)(2). "[T]he basis for equitable estoppel— relying on the agreement for one purpose while disavowing the arbitration clause of the agreement—is completely absent." *Goldman*, 92 Cal. Rptr. 3d at 551.

The foregoing demonstrates the Safleys did *not* rely on the terms of the Contract in asserting their claims against BMW. As in *Kramer*, the Safleys' warranty claims against BMW arose *independently* from the Contract. *Cf. Turtle Ridge Media Grp., Inc. v. Pac. Bell Directory*, 44 Cal. Rptr. 3d 817, 818-19 (Cal. Ct. App. 2006) (subcontractor could not avoid arbitration where subcontract *incorporated by reference* arbitration clause in original contract); *In re Apple iPhone 3G Prod. Liab. Litig.*, 859 F. Supp. 2d 1084, 1095

(N.D. Cal. 2012) (applying equitable estoppel as to manufacturer where provider's service agreement containing arbitration clause *included* manufacturer warranty).

        **b.     The Safleys did not allege substantially interdependent and concerted misconduct by Ford and a signatory that was "intimately connected" with the obligations of the Contract**

BMW does not contend it can compel arbitration through this prong of the equitable-estoppel test. Under BMW's own cited authority, it cannot do so. *See Mance v. Mercedes-Benz USA*, 901 F. Supp. 2d 1147, 1157 (N.D. Cal. 2012) ("Because Mr. Mance does not bring any claims against Dealer—and so there are no claims against a nonsignatory that are 'inherently bound up with' claims against a nonsignatory—only the first theory of equitable estoppel applies."). *But see Goldman v. KPMG LLP*, 92 Cal. Rptr. 3d 534, 541 (Cal. Ct. App. 2009) (explaining test is not whether *claims* are so "bound up," but rather whether *allegations* of interdependent misconduct is "founded in or intimately connected with the obligations of the underlying agreement").

To be sure, this is a straightforward Song-Beverly case. The Safleys allege BMW failed to promptly repurchase the Vehicle and breached its implied warranties in violation of the Song-Beverly Act. They make no allegations whatsoever against Dealer or its assignee, BMW Bank of North America ("BMW Bank"). Neither entity is a party to this lawsuit. Only three persons are mentioned in the complaint: Frank Safley, Deborah Safley, and BMW (plus BMW's authorized service and repair facilities). It should require no further analysis to conclude this prong of the equitable-estoppel test is not met. As in *Kramer*, there are *zero* "allegations of collusion or interdependent misconduct for purposes of equitable estoppel." 705 F.3d 1122, 1133 (9th Cir. 2013).

Even to the extent the complaint may be construed to allege substantially interdependent and concerted misconduct, such allegations, "standing alone, are not enough." *Goldman v. KPMG LLP*, 92 Cal. Rptr. 3d 534, 541 (Cal. Ct. App. 2009). The misconduct alleged must be "founded in and inextricably bound up with the obligations imposed by" the Contract. *Id.*; *see also id.* at 546 (explaining that, where "plaintiffs merely

alleged similar, not joint conduct," no claims against nonsignatory manufacturer were "inextricably bound up with the terms and duties of the contracts").

BMW played absolutely *no part* in executing the Contract and played absolutely *no role* in its performance by the Safleys, Dealer, and BMW Bank. The Safleys made no contrary allegation. The Safleys would have had the same claims against BMW even if they had paid cash for the Vehicle and no written agreement had been executed by the Safleys and Dealer. *Cf. Fuentes v. TMCSF, Inc.*, 237 Cal. Rptr. 3d 256, 265 (Cal. Ct. App. 2018) ("[Fuentes] is not relying on the *Security Agreement* [which contained an arbitration clause] in this action attacking the *Purchase Agreement* [based on the *dealership*'s false advertising]. Even if he had paid cash for the motorcycle, his complaint would be identical."). The second ground for equitable estoppel does not apply.

### c. The fact the Safleys would have had no claims against BMW but for their purchase of the Vehicle is utterly immaterial

BMW finds relevance in the fact the Safleys would have had no claims against it had they not purchased the Vehicle. *See, e.g.*, Motion at 22:8-12 (arguing Song-Beverly plaintiffs must show they bought or leased a new motor vehicle). However, this is irrelevant to the equitable-estoppel analysis. "A mere 'but for' test does not supply the 'intimately . . . intertwined' relationship upon which equitable estoppel is dependent." *In re Toyota Motor Corp. Unintended Mktg., Sales Practices, and Prod. Liab. Litig.*, 838 F.Supp.2d 967, 993 (C.D.Cal. 2012); *see also Goldman v. KPMG LLP*, 92 Cal. Rptr. 3d 534, 541 (Cal. Ct. App. 2009) (recognizing "significant" difference between "reference" to contract containing arbitration clause and "reliance" thereon).

### d. The fact the Contract encompasses claims *between the Safleys and Dealer* concerning resulting relationships with third parties is likewise immaterial

BMW further finds it relevant that the Arbitration Provision encompasses claims *between the buyer and the dealer* that "arise[] out of or relate[] to . . . th[e] contract or any resulting transaction or relationship (including any such relationship with third parties who

Plaintiffs' Opposition to Defendant's Motion to Compel Arbitration and Stay Action

do not sign this contract)." Motion at 11:24-12:2. Even if BMW's express warranty could be said to constitute a "resulting . . . relationship," any claims the Safleys have *against BMW* based on that warranty are beyond the scope of the Arbitration Provision, which applies only to claims between *buyer* and *dealer*.

This limitation is necessary because, without it, the buyer could use the Arbitration Provision to compel the arbitration of a dispute with her insurance company. *See* Defense Ex. 1, at ¶ 2(d) (buyer's contractual obligation to maintain insurance). In such a case, under the terms of the Arbitration Provision, the dealer would be obligated to advance the costs of that arbitration despite not being a party. *See* Defense Ex. 1 ("We will pay your [arbitration fees] up to a maximum of $5000 . . . ."); *see also id.* (defining, at top, "we" as "the Seller-Creditor," identified as "BMW ENCINITAS").

To the contrary, the Arbitration Provision indicates the parties' intent for it to reach, for example, a buyer's claim against a dealer concerning the buyer's relationship with a service contract company where such relationship arose from the sale contract (e.g., where the dealer sold the buyer a service contract for which the vehicle did not qualify). *See, e.g.,* Defense Ex. 1, at ¶ 1(I)(1) (reflecting purchase of third-party service contract as part of transaction).

e. **Equitable estoppel would work an *in*equity upon the Safleys and consumers statewide notwithstanding their constitutional rights to trials by jury**

Equitable estoppel is an equitable doctrine and should thus be applied only where equitably necessary. *See Goldman v. KPMG LLP*, 92 Cal. Rptr. 3d 534, 543 (Cal. Ct. App. 2009) ("[Plaintiffs] may be estopped from asserting the rights they otherwise would have to sue [nonsignatories] in court *only if* '[Plaintiffs'] own conduct renders assertion of those rights contrary to equity.'" (quoting *Metalclad Corp. v. Ventana Envtl. Org'l P'ship*, 109 Cal. App. 4th 1705, 1713 (2003)) (emphasis added)). This is true *only* where a signatory plaintiff seeks to "simultaneously invoke the duties and obligations of [the nonsignatory under the agreement] . . . while seeking to avoid arbitration." *Kramer v.*

1 | *Toyota Motor Corp.*, 705 F.3d 1122, 1134 (9th Cir. 2013); *accord Comer v. Micor, Inc.*,

2 | 436 F.3d 1098, 1101 (9th Cir. 2006). This test is *not* satisfied where the nonsignatory

3 | defendant has no duties or obligations under the contract containing the arbitration clause.

4 | *Kramer*, 705 F.3d at 1134.

5 | Here, although they seek to avoid arbitration as to BMW, *the Safleys never sought*

6 | *to invoke any duties or obligations of BMW under their contract with Dealer because*

7 | *BMW has no duties or obligations thereunder. Cf. Metalclad Corp. v. Ventana*

8 | *Environmental Org'l P'ship*, 109 Cal. App. 4th 1705, 1713 (2003) (applying equitable

9 | estoppel where signatory-plaintiff sued signatory-subsidiary's nonsignatory-parent-

10 | company, alleging nonsignatory-parent caused signatory-subsidiary to breach contract

11 | with signatory-plaintiff].) Nor does BMW have any right under that contract to compel

12 | arbitration. *Absolutely no inequity was present until BMW attempted to compel the Safleys*

13 | *to have their claims decided in a forum to which the Safleys never consented.*

14 | The Safleys were never put on notice that, by signing the contract with Dealer, they

15 | would be barred from maintaining judicial proceedings against BMW. Safley Decl. at ¶ 4;

16 | *see also* Defense Ex. 1, at ¶ 4 (Contract's disclaimer of BMW's warranty). The Safleys

17 | only agreed to arbitrate with BMW under the terms of BMW's express warranty.[7] They

18 | never agreed to arbitrate with BMW under the terms of their separate contract with Dealer.

19 | *Depriving the Safleys of a jury trial of their claims would not only deprive them of their*

20 | *bargain with BMW via BMW's express warranty; it would also unconstitutionally impinge*

21 | *their rights to trial by jury, which have* not *been waived.*

22 | The fact BMW's warranty contains "no arbitration clause makes it all the more

23 | apparent that the application of equitable estoppel . . . is entirely inappropriate." *Goldman*

24 | *v. KPMG LLP*, 92 Cal. Rptr. 3d 534, 555 (Cal. Ct. App. 2009). Imposing arbitration as to

25 | BMW would "be contrary to [the Safleys'] reasonable expectation[s] [and] result in loss

---

[7] As BMW's express warranty does not require binding arbitration, the Safleys' "bargain" was for there to be *no* binding arbitration of claims against BMW. *See* Rosner Decl. at ¶ 2; *see also generally* COE, Ex. 1 (warranty booklet).

or inequity"—as well as the abridgment of their constitutional rights. *Rowe v. Exline*, 63 Cal. Rptr. 3d 787, 797 (Cal. Ct. App. 2007). "[A]rbitration should *not* be imposed." *Id.* (emphasis added).

> ### 2. The Ninth Circuit's thoughtful analysis in the analogous case of *Kramer* is strongly persuasive—unlike the district court's conflicting opinion in *Mance*

As explained above, state law determines whether a nonparty to a contract may compel arbitration thereunder. *Arthur Andersen LLP v. Carlisle*, 556 U.S. 624, 632 (2009). Before the United States Supreme Court issued this decision, nearly all California courts applied federal substantive law on the issue of whether a signatory is "equitably estopped" from avoiding arbitration against a nonsignatory. *See, e.g., Boucher v. Alliance Title Co., Inc.*, 25 Cal. Rptr. 3d 440, 443 (Cal. Ct. App. 2005); *Metalclad Corp. v. Ventana Envtl. Org'l P'ship*, 109 Cal. App. 4th 1705, 1712 (2003); *see also Washington Mut. Fin. Grp., LLC v. Bailey*, 364 F.3d 260, 267 n.6 (5th Cir. 2004) (applying federal law after acknowledging law governing equitable estoppel "is often an uncertain question"). Since *Arthur Andersen*, no California court—state or federal—has strayed from federal principles. *See, e.g., Kramer v. Toyota Motor Corp.*, 705 F.3d 1122, 1128-29 (9th Cir. 2013) (explaining state law governs but applying rules from *Goldman*, which applied federal law). *But see Mance v. Mercedes-Benz USA*, 901 F. Supp. 2d 1147, 1155 n.5 (N.D. Cal. 2012) (failing to even acknowledge *Arthur Andersen* and applying federal law).

*Kramer* is particularly persuasive as the sole distinction is a slight difference in the terms of the arbitration agreement. What the Ninth Circuit found central to the dispute and common to all purchase agreements was (1) the use of "the language 'you' and 'we' or 'buyer' and 'dealer' to identify who may elect arbitration," and (2) the fact "Toyota [was] not a signatory" thereto. 705 F.3d at 1125. Both factors are present here, as the Contract contains the same "you"/"we" and "buyer"/"dealer" language, and BMW is not a signatory to the Contract. Defense Ex. 1 (defining, at top, "you" as "the Buyer (and Co-Buyer, if any), identified as "CLARENCE FRANK SAFLEY JR" and "DEBORAH S

1 SAFLEY," respectively, and defining "we" as "the Seller-Creditor," identified as "BMW

2 ENCINITAS"); Motion at 18:9-10.

3 It is thus immaterial that the relevant contractual language may seem

4 distinguishable at a cursory level. This is especially true considering most language cited

5 by *Kramer* is strictly exemplary. *See, e.g., Kramer*, 705 F.3d at 1124 ("The Purchase

6 Agreements also contained similarly worded arbitration provisions. For example, the

7 agreement entered into by Plaintiff Michael Scholten states . . . ." (footnote omitted))).

8 Language cited by the district court in reaching the same conclusion as the Ninth Circuit

9 in *Kramer* is nearly identical to the Arbitration Provision here. It even includes the

10 language, "(including any such relationship with third parties who do not sign this

11 contract)." *Compare In re Toyota Motor Corp. Hybrid Brake Mktg., Sales, Practices and*

12 *Prods. Liab. Litig.* 828 F. Supp. 2d 1150, 1159 (C.D. Cal. 2011), *with* Defense Ex. 1.[8]

13 It is blatantly wrong for BMW to contend *Kramer* bears no application in this *Song-*

14 *Beverly* case. Motion at 22:7-8. First, the district court reached the same conclusion as

15 *Kramer* on a separate motion by Toyota as to plaintiffs who brought causes of action for

16 "breach of implied warranty under the Song-Beverly Consumer Warranty Act." *In re*

17 *Toyota Motor Corp. Hybrid.*, 828 F. Supp. 2d at 1153. With respect to that cause of action,

18 the Central District wrote:

19 > The only claim that may possibly be somehow entangled with the Purchase
> Agreements is the claim for breach of implied warranty pursuant to the Song-
20 > Beverly Consumer Warranty Act, which provides that every sale of consumer
> goods in California is accompanied by both a manufacturer's and retail
21 > seller's implied warranty that the goods are merchantable. However, in the
> FAC, Plaintiffs clearly assert a breach of the manufacturer's implied warranty
22 > against Toyota, not against the dealerships that sold the car. . . . The Purchase
> Agreements also state that the seller's disclaimer "does not affect any
23

24 ---

[8] *Kramer* was an appeal from an order denying Toyota's motion to compel arbitration as
25 to a class of plaintiffs in a multidistrict litigation. *In re Toyota Motor Corp. Hybrid Brake*
*Mktg., Sales, Practices and Prods. Liab. Litig.*, No. 8:10-ML-02172-CJC(RNBx),
26 2011 WL 13160304 (C.D. Cal. Dec. 20, 2011). The district court reached the same
conclusion in a published opinion on an analogous motion by Toyota as to a separate class
27 of plaintiffs. *In re Toyota Motor Corp. Hybrid Brake Mktg., Sales, Practices and Prods.*
*Liab. Litig.*, 828 F. Supp. 2d 1150 (C.D. Cal. 2011).

28

Plaintiffs' Opposition to Defendant's Motion to Compel Arbitration and Stay Action

warranties covering the vehicle that the vehicle's *manufacturer* may provide"; thus, explicitly recognizing that Plaintiffs may have an independent claim against the manufacturer—*i.e.*, Toyota—for breach of implied warranties. *Id.* at 1161 (citations omitted).[9] Second, as discussed above, the Safleys would have still had valid causes of action under the Song-Beverly Act even if their transaction with Dealer was not memorialized in a written agreement that may or may not have contained an arbitration clause.

Notwithstanding *Kramer*'s clear applicability to the present case, BMW relies upon a Northern District opinion *pre*dating the Ninth Circuit's decision in *Kramer*: *Mance v. Mercedes-Benz USA*, 901 F. Supp. 2d 1147 (2012). Motion at 20:6-21:21. *Mance* is not persuasive. Just months after its publication, *Mance* was called into doubt by *Soto v. American Honda Motor Co., Inc.*, No. C 12-01377 SI, 2012 WL 5877476 (N.D. Cal. Nov. 20, 2012). That court recognized *Mance* did "not distinguish its holding from two other very recent and very similar cases," including a district court order from the same multidistrict litigation as *Kramer*. 2012 WL 5877476, *2 (citing *In re Toyota Motor Corp. Hybrid Brake Mktg., Sales, Practices and Prods. Liab. Litig.* 828 F. Supp. 2d 1150 (C.D. Cal. 2011).) *Soto* conceded the cases might not have been "brought to the attention of the *Mance* court" and then explained it did "not find *Mance* persuasive." *Id.* at *2-3. It took issue with *Mance*'s reliance on "another district court case for the legal standard for equitable estoppel," which conflicted with binding Ninth Circuit precedent. *Id.* at *2.

Since its inception, the only courts that have applied *Mance* in compelling arbitration as to a nonsignatory declined to explain their departure from *Kramer*; indeed, many failed to mention *Kramer* at all. *See generally Lanning v. BMW of North America, LLC*, No. 3:19-cv-00773-BEN-LL, 2019 WL 5748518, *2-3 (S.D. Cal. Nov. 5, 2019);

---

[9] There, Toyota relied upon *Agnew v. Honda Motor Co., Ltd.*, No. 1:08-cv-01433-DFH-TAB, 2009 WL 1813783 (S.D. Ind. May 20, 2009), cited by BMW here. Motion at 20:6-13. The district court was unpersuaded. It noted that *Agnew* "found that 'the claims for breach of express and implied warranties necessarily assume that the warranties were provided as part of the [dealer's] sale' to the plaintiff. In contrast, the breach of implied warranty claim asserted in the FAC do not rely on the terms in the Purchase Agreements; in fact, the Purchase Agreements expressly distinguish a warranty claim against Toyota from a claim against the dealerships." *In re Toyota Motor Corp. Hybrid*, 828 F. Supp. 2d at 1161-62 (quoting *Agnew* at *4).

1 | *Fikhman v. BMW of North America LLC*, No. 2:19-cv-03963-VAP-MRWx, 2019 WL
2 | 6721626, *2 (C.D. Cal. Oct. 15, 2019); *Katz v. BMW of North America, LLC*, No. 4:19-
3 | cv-01553-KAW, 2019 WL 4451014, *3-4 (N.D. Cal. Sept. 17, 2019).

4 |     Meanwhile, a number of other courts have recognized the case as *bad law* in light
5 | of *Kramer*. For example, one court wrote:

6 |     Chart's reliance on [*Mance*] is unpersuasive. The *Mance* court reasoned that
7 | because the plaintiff's claims made reference to or presumed the existence of
    an underlying contract, Mercedes-Benz's duty to comply with the warranty
    arose when the plaintiff bought the car; therefore, had the plaintiff not signed
8 | the contract he would not have received the warranty, and thus the warranty
    arose out of the contract. *This reasoning, however, has since been rejected by*
9 | *the Ninth Circuit.*

10 | *R. E. v. Pac. Fertility Ctr.*, No. 18-cv-01586-JSC, 2019 WL 1331044, at *6 (N.D. Cal.
11 | Mar. 25, 2019) (citation omitted) (emphasis added), *appeal filed in A. B. v. Prelude*
12 | *Fertility* (9th Cir. Apr. 26, 2019); *accord Jurosky v. BMW of North America, LLC*, ---
13 | F. Supp. 3d ---, 2020 WL 1024899, at *3 (S.D. Cal. Feb. 27, 2020); *Kim v. BMW of North*
14 | *America, LLC*, 408 F. Supp. 3d 1155, 1159 (C.D. Cal. 2019); *Speiker v. FCA US LLC*,
15 | No. SACV 19-02150 JVS (ADS), 2020 WL 1972507, *4-5 (C.D. Cal. Mar. 9, 2020);
16 | *Vincent v. BMW of North America, LLC*, No. CV 19-6439 AS, 2019 WL 8013093, *6-8
17 | (C.D. Cal. Nov. 26, 2019); *Amergence Supply Chain Mgmt. Inc. v. Changhong (Hong*
18 | *Kong) Trading Ltd.*, No. CV-15-9976-MWF (AFMx), 2016 WL 8234652, at *9 (C.D. Cal.
19 | Apr. 21, 2016). The only plausible explanation for contrary rulings by BMW is that BMW
20 | omitted reference to this line of cases as it did in its Motion here.

21 |     In sum, *Kramer* is analogous to the present case, and the Ninth Circuit's decision
22 | therein supplants *Mance*. Per *Kramer* and *Goldman*, BMW's Motion must be denied.

23 | **B.    BMW is not a third-party beneficiary of the Contract**

24 |     BMW alternatively argues it can compel arbitration as a nonsignatory third-party
25 | beneficiary to the Contract. Motion at 22:24-24:11. While a third-party beneficiary to a
26 | contract can compel arbitration thereunder, BMW is not a third-party beneficiary to the
27 | Contract. BMW "bears the burden of proving the promise [it] seeks to enforce was actually
28 | made to [it] personally or to a class of which [it] is a member." *Neverkovec v. Fredericks*,

74 Cal. App. 4th 337, 348-49 (1999); *see also* Civ. Code § 1559 (providing that only "[a] contract, made expressly for the benefit of a third person, may be enforced by him"). "It is not enough that the third party would *incidentally* have benefited from performance." *Souza v. Westlands Water Dist.*, 38 Cal. Rptr. 3d 78, 88; *accord Martinez v. Socoma Cos., Inc.*, 521 P.2d 841, 843 (Cal. 1974). The signatories must have manifested *in the contract* "inten[t] to confer a benefit on the  third party." *Neverkovec v. Fredericks*, 74 Cal. App. 4th at 348.

Nowhere in the Contract here is there manifestation of intent to confer a benefit on BMW—not even in the language upon which BMW most heavily relies. Motion at 23:10-16. The Arbitration Provision contains "its own list of intended third party beneficiaries," *Fuentes v. TMCSF, Inc.*, 237 Cal. Rptr. 3d 256, 265 (Cal. Ct. App. 2018): Dealer and its assignee's respective "employees, agents, successors or assigns," Defense Ex. 1. Assuming arguendo the Safleys' claims "'arise out of and relate to' [their] purchase and the condition of the subject Vehicle" and "the 'resulting' warranty relationship," Motion at 23:10-16, *the Arbitration Provision still does not extend to BMW*.

BMW apparently took a DNA test and it turned out it was 100 percent the thrice-removed cousin of BMW Bank. Motion at 8:4-9, 10:7-10. BMW alleges on this basis that BMW Bank is its "assign[]," "affiliate[]," and "subsidiary." Motion at 24:5-7. Only the first term appears in the Arbitration Provision, and it is used in conjunction with the word "successors." Defense Ex. 1. This language simply clarifies the assignee of the Contract bears Dealer's burdens under the Arbitration Provision (i.e., the *assignee* may compel the Safleys to arbitrate and vice versa). *Citizens Suburban Co. v. Rosemont Dev. Co.*, 53 Cal. Rptr. 551, 557 (Cal. Ct. App. 1966). Contrary to BMW's outright lie, Motion at 11:1-6, BMW Bank is the sole assignee of the Contract; BMW is *not* an assignee. Safley Decl. at ¶¶ 6-7; COE, Ex. 2. Nothing requires the Safleys to arbitrate the instant dispute upon BMW's election.

Even accepting BMW's unsupported assertions as true, BMW Bank is but a subsidiary of a subsidiary of BMW. Motion at 8:4-9. BMW failed to establish it is an

"employee[], agent[], successor[] or assign[]" of Dealer or BMW Bank. Defense Ex. 1. *If anything*, the roles would be reversed (i.e., BMW Bank is an "employee[], agent[], successor[] or assign[]" of BMW). However, BMW's connection to BMW Bank is even more attenuated than that.

Accepting this tenuous connection as allowing BMW to compel arbitration is simply illogical. To illustrate, when a consumer purchases a new BMW vehicle and the dealership commits fraud in the transaction, the consumer has a claim against the dealership and, often, the dealership's assignee, which may be BMW Bank or BMW Financial. 16 C.F.R. § 433.2. If that consumer were to name BMW in the lawsuit, BMW would surely defend the action on the ground it was not a party to the action and is wholly independent of both the dealership and the finance company. *It is patently clear BMW seeks to bend the law at its whim.* BMW Bank is a corporation of its own identity. COE, Ex. 8. BMW Financial is a limited liability of its own identity. COE, Ex. 9. Allowing BMW, a distinct entity, to compel arbitration under the Arbitration Provision would disregard corporate form.

The foregoing is what distinguishes the instant case from *Ronay Family Limited Partnership v. Tweed*, 157 Cal. Rptr. 3d 680 (Cal. Ct. App. 2013), and *Cione v. Foresters Equity Services, Inc.*, 58 Cal. App. 4th 625 (1997). Those courts found the nonsignatories fell within the *stated* class of intended beneficiaries. *See Ronay Family Ltd. P'ship v. Tweed*, 157 Cal. Rptr. 3d 680, 683, 686 (Cal. Ct. App. 2013) (finding, where arbitration agreement extended to signatory's "agents" and "registered representatives," nonsignatories could benefit from arbitration agreement because nonsignatories "acted as [signatory's] agents" and one nonsignatory "signed the account agreement as [a signatory's] registered representative"); *Cione v. Foresters Equity Servs., Inc.*, 58 Cal. App. 4th 625, 636 (1997) (finding, where arbitration agreement applied to disputes between "me and my firm," where "me" referred to Cione, and where Cione identified FESCO as his "firm" in the contract containing the arbitration clause, FESCO could compel Cione to arbitrate). Conversely, the Contract here evidences the signatories' intent

1  to leave BMW high and dry. In it, Dealer disclaims all liability for manufacturer warranties
2  and points the finger at BMW. Defense Ex. 1, at ¶ 4.

3  Likewise, BMW's reliance on *NORCAL Mutual Insurance Company v. Newton*,
4  100 Cal. Rptr. 2d 683 (Cal. Ct. App. 2000), is unavailing. BMW cites this decision as
5  suggesting it can compel arbitration under the contract between the Safleys and Dealer
6  simply because the Safleys accepted a benefit under that contract. Motion at 20 n.4. This
7  preposterous proposition would allow BMW to compel arbitration under virtually *any*
8  contract executed by the Safleys that contained an arbitration clause—perhaps even the
9  Safleys' contract with their internet provider. However, *NORCAL* holds, where a
10 nonsignatory reaps a benefit *under the contract containing the arbitration provision*, the
11 nonsignatory is bound to arbitrate. *NORCAL Mut. Ins. Co. v. Newton*, 100 Cal. Rptr. 2d
12 683, 697 (Cal. Ct. App. 2000) ("Regardless of whether [nonsignatory] was in fact entitled
13 to such coverage, having sought and accepted the benefit of the insurance policy in
14 handling the underlying malpractice suit, [nonsignatory] was required to abide by *the*
15 *policy*'s requirement of arbitration of disputes." (emphasis added)).

16 In sum, the Safleys promised under the sale contract to make payments to Dealer or
17 Dealer's assignee. BMW promised under its express warranty to repair any defects that
18 might arise in the Vehicle during a stated period, irrespective of whether the Safleys
19 satisfied their obligations under the Contract. The two agreements are distinct, have
20 nothing to do with each other, and do not rely on each other. This is most obvious in that
21 the Safleys must continue to make monthly payments under their sale contract despite
22 BMW's failure to repair the defective brake system. BMW had the opportunity to include
23 an arbitration provision in its warranty and *it chose not to*. It cannot now compel arbitration
24 of the Safleys' claims in their Contract with Dealer.

**VII.  Should the Court nonetheless grant BMW's Motion, the Safleys' forum choice**
**of JAMS should be honored**

27 BMW misleadingly asserts, "The subject Arbitration Provision allows Plaintiffs to
28 choose the American Arbitration Association ('AAA') or any other mutually agreeable

organization." Motion at 17:8-10.[10] BMW is correct only in that the right of forum *choice* lies exclusively with the Safleys: "*You may choose* [AAA] *or any other organization* to conduct the arbitration subject to our approval." Defense Ex. 1 (emphasis added). "You" refers to the Safleys, while "our" refers to Dealer. *Id.* Thus, the Safleys "may choose" AAA, which has been preapproved by Dealer. Alternatively, the Safleys "may choose" a different forum which has not been preapproved. Until now, the Safleys had yet to agree to any particular forum. Only Dealer agreed to AAA. Dealer also promised to arbitrate in at least one other forum. If the Court grants BMW's Motion, *the Safleys will agree to JAMS.* Safley Decl. at ¶ 8. They rightfully will *not* agree to AAA, despite that organization's mention in the Arbitration Provision. *Id.* As will be explained, BMW cannot avoid arbitration before JAMS.

**A.     The Safleys' choice of JAMS prevails over BMW's preferences**

Neither BMW nor Dealer can force the Safleys to arbitrate their dispute before any organization *not* of their "choos[ing]." This was not the intent of the Safleys and Dealer in agreeing to the Arbitration Provision. *See* Civ. Code § 1638 ("The language of a contract is to govern its interpretation, if the language is clear and explicit, and does not involve an absurdity."); *id.* § 1639 ("When a contract is reduced to writing, the intention of the parties is to be ascertained from the writing alone . . . ."); *id.* § 1644 ("The words of a contract are to be understood in their ordinary and popular sense."). To allow BMW, or even Dealer, to unilaterally elect AAA would disregard at BMW's whim the plain

---

[10] BMW falsely suggests the United States Supreme Court declared AAA is a "fair and neutral" "'major arbitration entit[y]'" and two state court decisions agreed. Motion at 17:10-14 (alteration in original). *Green Tree Financial Corp. v. Randolph*, 531 U.S. 79 (2000), contains no such holding, nor does it contain the quoted language. The same is true of the minority opinion cited by BMW. *Id.* at 95 (J. Ginsburg, concurring in part, dissenting in part). That case simply found the appellant failed to meet her burden of proof. *Id.* at 91-92. While a 1986 state appellate court decision stated AAA's rules "are generally regarded to be neutral and fair," this conclusion is unsupported. *Izzi v. Mesquite Country Club*, 186 Cal. App. 3d 1309, 1318 (1986) (abrogated on other grounds by *Sandquist v. Lebo Automotive, Inc.*, 376 P.3d 506 (Cal. 2016)). Even if it were supported, AAA's rules have since undergone numerous revisions. Rosner Decl. at ¶ 10. Meanwhile, *Sandquist* contains no mention whatsoever of AAA.

meaning of the Arbitration Provision, which must be construed *against* its drafter. *Id.* § 1654; *see also* Safley Decl. at ¶ 2 (showing Dealer drafted the Contract).

In fact, the Contract's reference to a particular arbitration provider makes "the possibility of overreaching by the dominant party loom[] large." *Graham v. Scissor-Tail, Inc.*, 28 Cal.3d 807, 824-25 (1981). The Contract "must be scrutinized with particular care to ensure" the Safleys are not left without "any realistic and fair opportunity to prevail in a dispute under its terms." *Id.* The Safleys' right to select the arbitrator is a "'valuable' contractual right." *Anderson v. Nichols*, 359 S.E.2d 117, 124 (W. Va. 1987). The absence of a "meaningful choice" would render the Arbitration Provision unconscionable. *Sanchez v. Valencia Holding Co., LLC*, 353 P.3d 741, 748 (Cal. 2015). Thus, Dealer's approval right must be exercised "in good faith and in accordance with fair dealing." *Cal. Lettuce Growers v. Union Sugar Co.*, 45 Cal. 2d 474, 484 (1955).

In the event the Court grants BMW's Motion, the Safleys choose JAMS as the forum. Safley Decl. at ¶ 8. Their choice *must* be honored in the absence of a good-faith basis for rejecting this well-known, reputable, neutral organization.

**B.   BMW cannot object to JAMS in good faith**

Under the Contract's terms, *Dealer* has a right of approval of the Safleys' chosen arbitration forum. *BMW* has no such right. Even if it did, it cannot object in good faith to JAMS. Under *Sanchez v. Valencia Holding Company, LLC*, 353 P.3d 741, 755 (Cal. 2015), it is unconscionable to require a consumer to front the cost of arbitration where "costs *in fact* would be unaffordable or would have a substantial [not merely potential] deterrent effect in [the consumer's] case." (Emphasis added). As that is the standard for consumers, it must be the standard for car manufacturers as well.

If a *consumer* is presumed to be able to afford a *three*-arbitrator panel, as the California Supreme Court determined in *Sanchez v. Valencia Holding Company, LLC*, 353 P.3d 741, 755 (Cal. 2015), surely BMW, which is responsible for the nationwide distribution of BMW vehicles to its authorized dealerships, Motion at 7:7-8, certainly cannot claim in good faith that it *in fact* cannot afford a single arbitrator at JAMS. *See*

Defense Ex. 1 ("Any claim or dispute is to be arbitrated by a single arbitrator . . . ."). Nor can BMW claim in good faith that requiring manufacturers to front the cost to arbitrate in JAMS would "substantially deter" manufacturers from pursuing whatever claims they might have against consumers. Accordingly, any objection based on the cost of JAMS would be unreasonable under *Sanchez* and lacking in good faith.

Should the Court nonetheless find BMW objected in good faith to the Safleys' chosen forum, pursuant to the express terms of the Arbitration Provision, the right to select an alternative forum rests *exclusively* with the Safleys. Otherwise, the Arbitration Provision would be unconscionable under *Sanchez v. Valencia Holding Company, LLC*, 353 P.3d 741, 748 (Cal. 2015). For sake of efficiency, however, the Safleys would consent to having the Court appoint an arbitrator in the manner described in Code of Civil Procedure section 1281.6. They do not consent to appointment under 9 U.S.C. § 5.

**VIII. Conclusion**

The Safleys respectfully request the Court deny BMW's Motion because it failed to establish, by a preponderance of the evidence, the existence of an arbitration agreement between the Safleys and BMW. Again, BMW produced an unauthenticated contract which it holds out as the sale contract between the Safleys and Dealer. Even assuming that contract is in fact the agreement the Safleys signed with Dealer for their purchase of the Vehicle, there is no basis in California law for BMW to compel arbitration as a nonsignatory to that contract. This action arises from BMW's express and implied warranties. BMW had the opportunity to include a binding arbitration clause in its express warranty and declined to do so. There simply is no agreement between the Safleys and BMW through which BMW can compel arbitration.

/ / /

/ / /

/ / /

/ / /

/ / /

1       In the event the Court nonetheless grants BMW's Motion, the Safleys will not
2   contest a stay pending arbitration. However, they request the Court enforce their right of
3   forum selection and order the matter to JAMS. Should BMW set forth a good-faith
4   objection to this provider, the Safleys agree to allow the Court to appoint an arbitrator
5   pursuant to Code of Civil Procedure section 1281.6, but not 9 U.S.C. § 5.

7   Dated: May 22, 2020                 ROSNER, BARRY & BABBITT, LLP

9                           By:   */s/ Hallen D. Rosner*
10                               Hallen D. Rosner
                                 Attorneys for Plaintiffs

Plaintiffs' Opposition to Defendant's Motion to Compel Arbitration and Stay Action