UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CLARENCE F. SAFLEY, JR.; DEBORAH S. SAFLEY,<br><br>　　　　　　　　　　Plaintiffs,<br><br>　v.<br><br>BMW OF NORTH AMERICA, LLC,<br><br>　　　　　　　　　　Defendant. | Case No. 20-cv-00366-BAS-MDD<br><br>**ORDER DENYING DEFENDANT'S MOTION TO COMPEL ARBITRATION (ECF No. 16)** |

　　　Presently before the Court is Defendant BMW of North America, LLC's Motion to Compel Arbitration and Stay This Action. (ECF No. 16.) Plaintiffs Clarence and Deborah Safley oppose. (ECF No. 19.) The Court finds this motion suitable for determination on the papers submitted and without oral argument. *See* Fed. R. Civ. P. 78(b); Civ. L.R. 7.1(d)(1). For the following reasons, the Court **DENIES** Defendant's motion.

**I.　BACKGROUND**

　　　On October 30, 2017, Plaintiffs acquired a 2017 BMW 540I sedan for a total sale price of $75,756.80 ("Vehicle"). (Retail Installment Sale Contract ("Sale Contract"), Fritter Decl. ¶ 3, Ex. 1, ECF No. 24-2[1]; *see also* Compl. ¶ 4, ECF No. 1-2.) Plaintiffs allege

---

[1] The Court addresses Plaintiffs' evidentiary objections to the Sale Contract below.

the Vehicle suffers from serious defects, and they delivered it to Defendant's repair facility "on numerous occasions." (Compl. ¶ 11.) However, Defendant has not fixed the Vehicle's problems. (*Id.* ¶ 12.) Therefore, Plaintiffs filed this action in San Diego County Superior Court under California's Song-Beverly Consumer Warranty Act. (*Id.* 1, ¶ 5.) Plaintiffs seek relief that includes reimbursement for the purchase price of the Vehicle—less the value of their use—and "a civil penalty of up to two times the amount of actual damages." (*Id.* ¶¶ 16–19.) Defendant removed this action based on diversity jurisdiction and filed an answer.[2] (Notice of Removal ¶¶ 7–14, ECF No. 1; Answer, ECF No. 3.)

The Sale Contract contains an arbitration provision. It provides:

> Any claim or dispute, whether in contract, tort, statute or otherwise (including the interpretation and scope of this Arbitration Provision, and the arbitrability of the claim or dispute), between you and us or our employees, agents, successors or assigns, which arises out of or relates to your credit application, purchase or condition of this vehicle, this contract or any resulting transaction or relationship (including any such relationship with third parties who do not sign this contract) shall, at your or our election, be resolved by neutral, binding arbitration and not by a court action.

(Sale Contract 2.) Based on this arbitration provision, Defendant moves to compel arbitration of Plaintiffs' Song-Beverly Complaint and stay this action until the arbitration is complete. (Mot., ECF No. 16-1.) The motion is fully briefed, including a sur-reply. (ECF Nos. 19, 24, 31.)

---

[2] Whereas Plaintiffs are citizens of California, Defendant is a citizen of Delaware and New Jersey. (Notice of Removal ¶¶ 8, 11–14.) *See Johnson v. Columbia Props. Anchorage, LP*, 437 F.3d 894, 899 (9th Cir. 2006) (explaining the citizenship rule for limited liability companies). And Defendant sets forth "a plausible allegation that the amount in controversy exceeds the jurisdictional threshold." (*See* Notice of Removal ¶¶ 15–22.) *See Dart Cherokee Basin Operating Co. v. Owens*, 574 U.S. 81, 84, 89 (2014); *see also Park v. Jaguar Land Rover N. Am., LLC*, No. 20-cv-00242-BAS-MSB, 2020 WL 3567275, at *2–4 (S.D. Cal. July 1, 2020) (analyzing the amount in controversy for a Song-Beverly claim). Thus, the Court confirms it has diversity jurisdiction.

## II. LEGAL STANDARD

The Federal Arbitration Act ("FAA") makes agreements to arbitrate "valid, irrevocable, and enforceable." 9 U.S.C. § 2. The FAA permits a "party aggrieved by the alleged failure, neglect, or refusal of another to arbitrate under a written agreement for arbitration [to] petition any United States District Court . . . for an order directing that . . . arbitration proceed in the manner provided for in [the arbitration] agreement." *Id.* § 4. Upon a showing that a party has failed to comply with a valid arbitration agreement, the district court must issue an order compelling arbitration. *Id.* "A party seeking to compel arbitration has the burden under the FAA to show (1) the existence of a valid, written agreement to arbitrate; and if it exists, (2) that the agreement to arbitrate encompasses the dispute at issue." *Ashbey v. Archstone Prop. Mgmt., Inc.*, 785 F.3d 1320, 1323 (9th Cir. 2015).

## III. ANALYSIS

As one court aptly observed: "This type of case is not new." *Ruderman v. Rolls Royce Motor Cars, LLC*, _ F. Supp. 3d _, 2021 WL 141179, at *3 (C.D. Cal. Jan. 7, 2021). It is but one of many where a car manufacturer or distributor seeks to enforce the arbitration clause in a dealership's contract. Courts, including this one, have reached different outcomes depending on the language of the dealerships' agreements and the parties' arguments. *See, e.g.*, *Nation v. BMW of N. Am., LLC*, No. 2:20-cv-02709-JWH (MAAx), 2020 WL 7868103, at *4 (C.D. Cal. Dec. 28, 2020) (declining to compel arbitration); *Saponjic v. BMW of N. Am., LLC*, No. 20-cv-703-BAS-RBB, 2020 WL 4015671, at *2 (S.D. Cal. July 16, 2020) (compelling arbitration). Before considering those items here, the Court first addresses Plaintiffs' evidentiary challenges to the Sale Contract.

### A. Authenticated Agreement

Plaintiffs challenge Defendant's introduction of the Sale Contract that contains the arbitration provision. (Opp'n 3:4–27; Sur-Reply 1:11–2:4.) To introduce the Sale Contract, Defendant relies on a declaration from Ryan Fritter, who is an "Open Collections

Team Leader for BMW Financial Services NA, LLC ('BMW FS')."[3] (Fritter Decl. ¶ 1, ECF No. 24-2.) Mr. Fritter has worked for BMW FS for four years, where he is "able to access BMW FS' documents, including files related to retail installment contracts assigned to BMW FS by dealers." (*Id.* ¶ 2.) Based on his experience working for BMW FS, he is "familiar with BMW FS' retail installment account procedures, retail installment account record keeping, document preparation, and record retention policies and practices." (*Id.*) Thus, Mr. Fritter declares under penalty of perjury that the Sale Contract attached to his declaration is a true and correct copy of an agreement that "BMW Encinitas assigned . . . to BMW Bank of North America, which is a wholly owned subsidiary of [BMW FS]." (*Id.* ¶ 3.)

Plaintiffs object to Mr. Fritter's declaration on hearsay and other grounds. (ECF No. 32.) They also argue that Mr. Fritter cannot possibly authenticate the Sale Contract because he was not "present at the time of the transaction" and does not show he has personal knowledge of the "chain of custody of the document." (Sur-Reply 2:5–2:23.)

The Court starts with authentication. "To satisfy the requirement of authenticating or identifying an item of evidence, the proponent must produce evidence sufficient to support a finding that the item is what the proponent claims it is." Fed. R. Evid. 901(a). "The burden to authenticate under Rule 901 is not high." *United States v. Recio*, 884 F.3d 230, 236 (4th Cir. 2018); *see also United States v. Ceballos*, 789 F.3d 607, 618 (5th Cir. 2015) (characterizing the proponent's burden as "low"). In the trial context, the court "must merely conclude that the jury could reasonably find that the evidence is authentic, not that the jury necessarily would so find." *Id.*

---

[3] As explained in the Court's prior order (ECF No. 30), Defendant did not provide Mr. Fritter's declaration with its moving papers. Rather, to introduce the Sale Contract, Defendant invoked the doctrines of judicial notice and incorporation by reference and cited to a declaration by its outside counsel. When Plaintiffs challenged these efforts, Defendant filed Mr. Fritter's declaration with its reply. After explaining why Defendant's initial efforts were inadequate, the Court informed the parties it would consider the new evidence submitted with the reply in the interest of judicial efficiency. Thus, the Court also permitted Plaintiffs to file a sur-reply to address this evidence, and they have. (ECF No. 31; *see also* ECF No. 32.)

A document can be authenticated through a witness with personal knowledge—someone who "wrote it, signed it, used it or saw others do so." *Orr v. Bank of Am., NT & SA*, 285 F.3d 764, 774 (9th Cir. 2002). A document can also be authenticated by the "[a]ppearance, contents, substance, internal patterns, or other distinctive characteristics, taken in conjunction with circumstances." Fed. R. Evid. 901(4).

The Court is satisfied that Defendant meets its burden to authenticate the Sale Contract. Mr. Fritter declares that he is familiar with his employer's recordkeeping policies and that the document before the Court is an accurate copy of the Sale Contract assigned to BMW FS's subsidiary. The Sale Contract itself also bears sufficient indicia that, taken in conjunction with the circumstances of its production from Mr. Fritter's employer, support Defendant's claim that the agreement is what it purports to be. *See* Fed. R. Evid. 901(4); *see also Lopez v. Delta Int'l Mach. Corp.*, 312 F. Supp. 3d 1115, 1154 (D.N.M. 2018) (rejecting authentication challenge to a purchase agreement where the document appeared to be what it purported to be, a corporate entity successor produced the document, and the plaintiff gave the court "no evidence to question" the contract's genuineness). Finally, the Court underscores that Plaintiffs do not submit evidence contesting the authenticity of the document before the Court. Plaintiff Clarence Safley states that he "did not prepare this contract" and "was not given an option to sign a contract without miscellaneous provisions," but he does not claim the signature on the Sale Contract is not his. (*See* Safley Decl. ¶ 2, ECF No. 21.)

Accordingly, because Defendant meets its low burden to authenticate the Sale Contract, and because Plaintiffs do not submit any evidence challenging the document's authenticity, the Court overrules Plaintiffs' authentication objection.

As for hearsay, this objection misses the mark. Defendant is relying on the Sale Contract—a written agreement—to enforce one of its terms. The Sale Contract has independent legal significance; it defines the rights and obligations of the parties to the agreement, regardless of the truth of any assertions made in the document. Consequently, the Sale Contract is not hearsay. *See, e.g.*, *Stuart v. UNUM Life Ins. Co. of Am.*, 217 F.3d

1145, 1154 (9th Cir. 2000) ("The Policy is, therefore, excluded from the definition of hearsay and is admissible evidence because it is a legally operative document that defines the rights and liabilities of the parties in this case."); *see also* David F. Binder, *Hearsay Handbook* § 2.6. Assertion with Direct Legal Significance (4th Ed. 2000).

Overall, having considered Plaintiffs' objections to the Sale Contract and Mr. Fritter's declaration, the Court overrules them. The Court accepts the Sale Contract and turns to whether compelling arbitration is warranted.

### B.     Enforcement by Nonsignatory

Moving beyond the evidentiary issues, Plaintiffs raise a recurring argument in this type of case: Defendant cannot enforce the arbitration provision because Defendant is not a signatory to the Sale Contract. (Opp'n 6:17–21:24.) Indeed, BMW Encinitas, the car dealership, signed the Sale Contract—not Defendant, which is the Vehicle's distributor. The car dealership then assigned the Sale Contract to BMW Bank of North America. This assignee is purportedly a subsidiary of BMW FS, which in turn is either managed by or is a subsidiary of Defendant. (*See* Fritter Decl. ¶ 3.)[4] The Court includes its understanding of the different relationships below.

---

[4] Another declarant, Mr. Weight, states that BMW FS is a wholly-owned subsidiary of Defendant. (Weight Decl. ¶ 3, ECF No. 23.) This Court and others have recognized that Defendant is the managing entity of BMW FS. *See Saponjic v. BMW of N. Am., LLC*, No. 20-CV-703-BAS-RBB, 2020 WL 4015671, at *2 (S.D. Cal. July 16, 2020) (citing cases). Whether Defendant is merely the managing entity of BMW FS, its owner, or both does not change the Court's analysis.



Although Defendant is not a party to the Sale Contract, Defendant offers several arguments for why compelling arbitration in these circumstances is appropriate.

### 1. Delegation to the Arbitrator

Preliminarily, Defendant argues an arbitrator, not the Court, should decide whether Defendant can enforce the Sale Contract as a nonsignatory. (Mot. 12:8–13:17.) The issue of arbitrability "is left to the court unless the parties clearly and unmistakably provide otherwise." *Momot v. Mastro*, 652 F.3d 982, 988 (9th Cir. 2011); *see also Oracle Am., Inc. v. Myriad Grp. A.G.*, 724 F.3d 1069, 1072 (9th Cir. 2013). "Clear and unmistakable evidence of an agreement to arbitrate arbitrability 'might include . . . an express agreement to do so.'" *Mohamed v. Uber Techs., Inc.*, 848 F.3d 1201, 1208 (9th Cir. 2016) (quoting *Momot*, 652 F.3d at 988). If the parties unmistakably agree to arbitrate the "gateway issue" of arbitrability, then this agreement is "simply an additional, antecedent agreement" that is subject to the FAA. *Rent–A–Ctr., W., Inc. v. Jackson*, 561 U.S. 63, 70. (2010).

Defendant correctly notes that the Sale Contract delegates arbitrability concerns to the arbitrator. It provides that a dispute regarding "the interpretation and scope of [the] Arbitration Provision, and the arbitrability of the claim or dispute," shall be arbitrated. (Sale Contract 2.) Defendant, however, still must have the right to enforce this "additional, antecedent agreement" under the FAA. *See Jackson*, 561 U.S. at 70; *see also Henry Schein, Inc. v. Archer & White Sales, Inc.*, 139 S. Ct. 524, 530 (2019) ("To be sure, before referring a dispute to an arbitrator, the court determines whether a valid arbitration agreement exists."). Defendant did not sign the Sale Contract, and Defendant is not plainly included in the arbitration clause's terms. Rather, the arbitration provision states any such dispute "shall, at your or our election, be resolved by neutral, binding arbitration." (Sale Contract 2.) *See Kramer v. Toyota Motor Corp.*, 705 F.3d 1122, 1127 (9th Cir. 2013) (rejecting a delegation argument in comparable circumstances). Consequently, the Court must decide whether Defendant can enforce the arbitration agreement, including the contract's agreement to delegate arbitrability issues to the arbitrator. *See Kramer*, 705 F.3d at 1127 ("Given the absence of clear and unmistakable evidence that Plaintiffs agreed to arbitrate arbitrability with nonsignatories, the district court had the authority to decide whether the instant dispute is arbitrable.").

### 2. Third-Party Beneficiary

Defendant argues it can enforce the arbitration provision because it is a third-party beneficiary of the Sale Contract. (Mot. 22:24–24:14.) "[A]rbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit." *Kramer*, 705 F.3d at 1126 (quoting *United Steelworkers of Am. v. Warrior & Gulf Nav. Co.*, 363 U.S. 574, 582 (1960)). But "a litigant who is not a party to an arbitration agreement may invoke arbitration under the FAA if the relevant state contract law allows the litigant to enforce the agreement." *Id.* at 1128 (citing *Arthur Andersen LLP v. Carlisle*, 556 U.S. 624, 632 (2009)); *see also Mundi v. Union Sec. Life Ins. Co.*, 555 F.3d 1042, 1045 (9th Cir. 2009) ("General contract and agency principles apply in determining the enforcement of an arbitration agreement by or against nonsignatories.").

Under California law, a "contract, made expressly for the benefit of a third person, may be enforced by him at any time before the parties thereto rescind it." Cal. Civ. Code § 1559. "It is well established that a nonsignatory beneficiary of an arbitration clause is entitled to require arbitration." *Harris v. Superior Court*, 188 Cal. App. 3d 475, 478 (1986). To compel arbitration as a third-party beneficiary, the third party must show the contract reflects the express or implied intention of the parties to the contract to benefit the third party. *Comer v. Micor, Inc.*, 436 F.3d 1098, 1102 (9th Cir. 2006). The third party must be "more than incidentally benefitted by the contract." *Gilbert Fin. Corp. v. Steelform Contracting Co.*, 82 Cal. App. 3d 65, 70 (1978).

The Court considered this third-party beneficiary argument in an analogous case, *Saponjic v. BMW of North America, LLC*, No. 20-cv-703-BAS-RBB, 2020 WL 4015671 (S.D. Cal. July 16, 2020). There, the same defendant sought to compel arbitration of a consumer breach of warranty action. But the relevant dealership used a lease agreement with different language. The lease agreement defined the lessor as including the "lessor's assignee." *Id.* at *1. The arbitration provision then extended to cover claims against the lessor's (or the lessor's assignee's) "officers, directors, **affiliates**, successors, or assigns." *Id.* at *2 (emphasis added). And in a slight variation from this case, the lease agreement in *Saponjic* was assigned to BMW FS—instead of BMW Bank of North America. *Id.*

"An affiliate is normally understood as 'a company effectively controlled by another or associated with others under common ownership or control.'" *Revitch v. DIRECTV, LLC*, 977 F.3d 713, 717 (9th Cir. 2020). In *Saponjic*, the Court determined Defendant is the manager of BMW FS, which had stepped into the shoes of the dealership as the lessor's assignee. Hence, Defendant and BMW FS are "affiliates," and Defendant could enforce the *Saponjic* arbitration provision as a third-party beneficiary because the agreement encompassed claims against the lessor's assignee's "affiliates." 2020 WL 4015671, at *2; *see also, e.g.*, *Collins v. BMW of N. Am., LLC*, No. 20-cv-1635-GPC(AGS), 2021 WL 242938, at *4 (S.D. Cal. Jan. 25, 2021) (reasoning Defendant could enforce the arbitration agreement because it included disputes with "affiliates"); *accord Phillips-Harris v. BMW*

*of N. Am., LLC*, No. CV 20-2466-MWF (AGRx), 2020 WL 2556346, at \*10 (C.D. Cal. May 20, 2020) (relying on "affiliates" language to compel arbitration).

The Sale Contract here defines the "Seller-Creditor" as simply "BMW Encinitas." It also notes that the dealership is sometimes referred to as "we" or "us," but this definition does not mention the dealership's assignee. (Sale Contract 1.) Further, there is no mention of "affiliates" in the Sales Contract's arbitration provision. The provision covers claims "between you [the Safleys] and us [BMW Encinitas] or our employees, agents, successors, or assigns . . . ." (Sale Contract 2.) The provision also states that a covered dispute "shall, at your [the Safleys'] or our [BMW Encinitas's] election, be resolved by neutral, binding arbitration." (*Id.*)

The Court is unconvinced that this narrower contract covers Defendant as a third-party beneficiary. Defendant does not demonstrate that it falls under one of the categories of third parties identified in the arbitration provision's claim coverage: the dealership's "employees, agents, successors, or assigns." BMW Bank of North America—not Defendant—is the assignee and successor to the dealership's rights and responsibilities under the Sale Contract. And although Defendant may be the parent company of BMW FS, which in turn is apparently the parent company of BMW Bank of North America, these are all separate legal entities. "[C]orporation law is largely built on the idea that the separate legal existence of corporate entities should be respected—even when those separate corporate entities are under common ownership and control." *Allied Capital Corp. v. GC-Sun Holdings, L.P.*, 910 A.2d 1020, 1038 (Del. Ch. 2006) (Strine, V.C.).

Therefore, without broader language like "parents" or "affiliates" in the arbitration clause, Defendant's argument that it "falls within the class of persons (*i.e.*, assigns) whom the Arbitration Provision was intended to benefit" is unpersuasive. (Mot. 24:1–8.) *Cf. Silva v. Butori Corp.*, No. CV-19-04904-PHX-MTL, 2020 WL 2308528, at \*4 (D. Ariz. May 8, 2020) (interpreting employment arbitration provision that covered "parent, subsidiary, and affiliated entities"); *Johnson v. CACH, LLC*, No. 1:16-cv-00383-BLW, 2016 WL 7330571, at \*3 (D. Idaho Dec. 16, 2016) (construing arbitration provision that

included a bank's "parent, subsidiaries, affiliates, licensees, predecessors, successors, [and] assigns"); *see also Adams v. AT & T Mobility, LLC*, 524 F. App'x 322, 324 (9th Cir. 2013) (reasoning arbitration clause reached not only a company's successor, but also its parent company where the contract defined "the subject pronoun 'we' to include various additional parties, such as assignees, parent companies, successors, subsidiaries, and affiliates").

Nor does Defendant show other language in the Sale Contract establishes the contracting parties expressly or impliedly intended to more than incidentally benefit Defendant.  Other courts have been similarly unpersuaded on this point.  *See Jurosky v. BMW of N. Am., LLC*, 441 F. Supp. 3d 963, 975 (S.D. Cal. 2020) (determining that although Defendant "is an incidental beneficiary of an agreement between a dealership and buyer to purchase a BMW vehicle," the agreement did "not reflect the express or implied intent of the parties to benefit BMW"); *Kim v. BMW of N. Am., LLC*, 408 F. Supp. 3d 1155, 1159 (C.D. Cal. 2019) (concluding Defendant was not more than incidentally benefitted by a vehicle purchase agreement).  Accordingly, the Court finds Defendant cannot enforce the Sale Contract's arbitration provision under a third-party beneficiary theory.

### 3. Equitable Estoppel

Defendant alternatively argues that it can compel arbitration under the doctrine of equitable estoppel.  (Mot. 18:16–22:23.)  As mentioned, the Court looks to "the relevant state contract law" to determine if Defendant can enforce the arbitration provision under this theory.  *See Kramer*, 705 F.3d at 1130 n.5.  In California, the doctrine of equitable estoppel allows a nonsignatory to enforce an arbitration agreement in two circumstances:

> (1) when a signatory must rely on the terms of the written agreement in asserting its claims against the nonsignatory or the claims are "intimately founded in and intertwined with" the underlying contract, and (2) when the signatory alleges substantially interdependent and concerted misconduct by the nonsignatory and another signatory and "the allegations of interdependent misconduct [are] founded in or intimately connected with the obligations of the underlying agreement."

*Id.* at 1128–29 (citations omitted) (quoting *Goldman v. KPMG LLP*, 173 Cal. App. 4th 209, 221 (2009)).

The Ninth Circuit applied the equitable estoppel doctrine in *Kramer*, which involved whether "Toyota, a nonsignatory to several agreements with arbitration provisions between Plaintiffs and various Toyota dealerships," could compel arbitration. 705 F.3d at 1124. Like here, those agreements' arbitration provisions used language like "'you' and 'we' or 'buyer' and 'dealer' to identify who may elect arbitration." *Id.* at 1125. The district court declined to compel arbitration. *Id.* at 1128.

On appeal, Toyota—like Defendant—advanced an equitable estoppel argument. The Ninth Circuit rejected it. *Id.* at 1128–1134. The court explained that the plaintiffs' consumer and implied warranty claims did not "not seek to enforce or challenge the terms, duties, or obligations of the Purchase Agreements" containing the arbitration provisions. *Id.* at 1132. Hence, the first equitable estoppel circumstance, which involves reliance on the contract's terms and asserting intertwined claims, was inapplicable. The Ninth Circuit similarly concluded the second circumstance involving "interdependent and concerted misconduct by the nonsignatory and another signatory" did not apply; therefore, it affirmed the district court. *Id.* at 1132–34.

Beyond the analogous decision in *Kramer*, Judge Miller applied the equitable estoppel analysis in a similar case in *Jurosky v. BMW of North America, LLC*, 441 F. Supp. 3d 963 (S.D. Cal. 2020). Like here, Defendant in *Jurosky* sought to enforce one of its dealerships' arbitration provisions, which appears indistinguishable from the one in this case. In a thorough and convincing analysis, Judge Miller addressed Defendant's equitable estoppel theory. *Id.* 969–974. He explained that although the *Jurosky* plaintiff's claims depended on Defendant's warranties, "the purchase agreement expressly differentiates BMW's warranty from the dealership's warranties" and "demonstrates an intent to distinguish and distance the dealership's purchase agreement from any warranty that BMW 'may' provide." *Id.* at 970 (citing *Kramer*, 705 F.3d at 1131). Hence, Judge Miller found the plaintiff's Song-Beverly claims "do not rely on the purchase agreement, and they are

not intimately found in or intertwined with, the purchase agreement containing the arbitration clause." *Id.* The same holds true here. Plaintiffs are not suing based on any obligations found in the text of the Sale Contract. The contract also similarly demonstrates an intent to distance the agreement from any warranty that Defendant "may provide." (Sale Contract 2.)

Moreover, Judge Miller rejected many of the other arguments that Defendant asserts in this case. (*See* Mot. 21:23–22:23; Reply 11:9–14:12.) *See Jurosky*, 441 F. Supp. 3d at 969–74. The Court incorporates and adopts his analysis here. The Court also finds Defendant's attempts to distinguish *Jurosky* are unconvincing. (*See* Reply 13:22–14:12, *see supra* Part III.A (addressing the assignment issue based on this arbitration clause's text).)

That said, there is one last wrinkle concerning equitable estoppel. While this motion was pending, the California Court of Appeal issued a decision that appears to shift the relevant state law. In *Felisilda v. FCA US LLC*, 53 Cal. App. 5th 486 (2020), the Felisildas purchased a used vehicle from a dealer, and when the vehicle turned out to be defective, they sued both the dealer and the manufacturer. *Id.* at 489. The dealer moved to compel arbitration under an arbitration provision that is virtually identical to the one in this case, the manufacturer filed a notice of non-opposition, and the trial court compelled the Felisildas to arbitrate their claims against both the dealer and the manufacturer. *Id.* at 491. The Court of Appeal affirmed the decision compelling the Felisildas to arbitrate their claims against the manufacturer "because the Felisildas expressly agreed to arbitrate claims arising out of the condition of the vehicle—even against third party nonsignatories to the sales contract." *Id.* at 497.

A district court has since analyzed *Felisilda* in a case like this one. *Ruderman v. Rolls Royce Motor Cars, LLC*, ＿ F. Supp. 3d ＿, 2021 WL 141179, at *4 (C.D. Cal. Jan. 7, 2021). In *Ruderman*, the court distinguished *Felisilda*, explaining:

//
//

> But *Felisilda* is not directly on point, because the Felisildas sued both the manufacturer ***and*** the dealer. Ruderman, on the other hand, sued only Rolls-Royce. *Felisilda*, therefore, does not change state law that directly controls this case. *Kramer* remains the controlling precedent for this case. Under the *Kramer* line of cases, Rolls-Royce cannot compel Ruderman to arbitrate his claims against it under the doctrine of equitable estoppel.

*Id.*; *accord Ellington v. Eclipse Recreational Vehicles, Inc.*, No. 5:20-cv-00800-JWH (SPx), 2020 WL 8073607, at *4 (C.D. Cal. Dec. 14, 2020); *Nation v. BMW of N. Am., LLC*, No. 2:20-cv-02709-JWH (MAAx), 2020 WL 7868103, at *4 (C.D. Cal. Dec. 28, 2020).

The Court agrees. As the *Felisilda* court highlighted, the arbitration provision mentions claims regarding the "condition of this vehicle, this contract or any resulting transaction or relationship (including any such relationship with third parties who do not sign this contract)." (Sales Contract 2.) But that language is only one part of the definition of a covered claim. The arbitration provision first defines claims as those "between you and us or our employees, agents, successors or assigns." (Sale Contract at 2.) Neither the dealership nor one of its "employees, agents, successors, or assigns" is named in this lawsuit or seeking to enforce the arbitration provision. *See* supra Part III.A. Thus, the Court similarly finds *Felisilda* to be distinguishable. The reasoning in *Kramer* and *Jurosky* convincingly addresses these circumstances. Consequently, the Court finds Defendant is not entitled to enforce the Sale Contract's arbitration provision under the equitable estoppel doctrine.[5]

//
//
//

---

[5] The Court recognizes this area of the law is uncertain. There are at least several appeals pending before the Ninth Circuit involving the applicability of *Kramer* to comparable arbitration provisions. *See Ruderman v. Rolls Royce Motor Cars NA, LLC*, No. 21-55068 (9th Cir. filed Jan. 26, 2021); *Ellington v. Eclipse Recreational Vehicles*, No. 21-55022 (9th Cir. filed Jan. 8, 2021); *In re: liaison Counsel for Plaintiffs v. Ford Motor Co.*, No. 55780 (9th Cir. filed July 31, 2020). If there is an intervening change in controlling law, the Court can revisit the issue.

## IV. CONCLUSION

Defendant is not a party to the contract containing the arbitration provision, and Defendant has not shown that it can enforce the contract as a nonsignatory. The Court therefore **DENIES** Defendant's motion to compel arbitration. (ECF No. 16.)

**IT IS SO ORDERED.**

**DATED: February 5, 2021**

Hon. Cynthia Bashant
United States District Judge